IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **SALUM RESTAURANT LTD d/b/a SALUM RESTAURANT,**<br><br>**Plaintiff,**<br><br>v.<br><br>**THE TRAVELERS INDEMNITY COMPANY,**<br><br>**Defendant** | Civil Action No. 3:20-cv-01034<br><br>COMPLAINT AND JURY DEMAND |

## PLAINTIFF'S ORIGINAL COMPLAINT

### I.  INTRODUCTION

1. Plaintiff, Salum Restaurant Ltd. d/b/a Salum Restaurant ("Salum"), files this complaint against Defendant, The Travelers Indemnity Company ("Travelers"), for its denial of benefits for the business interruption sustained by Salum as a result of the "Stay Home Stay Safe" orders issued by Dallas County and the City of Dallas. These orders prohibited all dine-in services at restaurants in the County and within the City's limits, and Salum's business is offering dine-in fine dining experiences and catering services for formal events. Despite the extensive interruption of Salum's business, Travelers summarily denied its claim while the "Stay Home Stay Safe" order was still in place.

### II.  PARTIES

2. Plaintiff, Salum Restaurant Ltd. d/b/a Salum Restaurant ("Salum"), is a limited partnership organized under the laws of Texas with its principal place of business at 4152 Cole Avenue, Texas 75204, Dallas County, Texas. Plaintiff Salum is authorized to do business in the State of Texas.

3. Defendant, The Travelers Indemnity Company, is a corporation organized under the laws of Connecticut, with its principal place of business at One Tower Square, Hartford, Connecticut 06183. Citation may be served through its registered agent for service of process at Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218, Travis County, Texas.

4. At all times herein, Defendant acted by and through its duly authorized agents and servants, each acting within the course and scope of his or her employment.

### III.   JURISDICTION AND VENUE

5. Venue is proper in the Northern District of Texas pursuant 28 U.S.C.A. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Texas and the insured premises that is the subject of the action is situated in the Northern District of Texas.

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy is greater than $75,000 and plaintiff and defendant are citizens of different states.

7. This Court has specific jurisdiction over Defendant as its activities were directed toward Texas and injuries complained of resulted from their activities in Texas. Defendant has a substantial connection with Texas and the requisite minimum contacts with Texas necessary to constitutionally permit the Court to exercise jurisdiction.

### IV.   FACTUAL ALLEGATIONS

**A. Plaintiff Salum Obtains Insurance Coverage for Its Business from Defendant Travelers.**

8. Plaintiff Salum provides fine dining services in Dallas, Texas. It is owned by Chef Abraham Salum. The restaurant specializes in fine cuisine and wine. It offers an exclusive dining experience in the restaurant setting. It is located in the center of Dallas County.

9. Travelers issued commercial policy number 680-7G01605A-20-42 to Salum for the policy period of January 14, 2020 to January 14, 2021, including Business Income (Extra Expense) Coverage Form (the "Policy") for the property located at 4152 Cole Avenue #103, Dallas, Texas 75204; 1135 S. Lamar St., Dallas, Texas 75215; 7750 North Macarthur Blvd. Suite 120-352, Irving, Texas 75063; 2001 Ross Avenue Suite 325, Dallas, Texas 75201 ("Insured Premises"). This policy is attached hereto as Exhibit A.  Salum has performed all of its obligations under the Policy, including faithfully paying policy premiums.

**B.  The Coronavirus 2019 Global Pandemic Causes Damage, Including in Dallas County.**

10. The Coronavirus disease was first detected toward the end of 2019, emerging in Wuhan, China. The World Health Organization proposed the nomenclature COVID-19, standing for coronavirus disease 2019.[1]

11. On January 30, 2020, the World Health Organization declared the virus a public health emergency of international concern. In February 2020, coronavirus deaths began to be reported outside of China. Throughout February 2020, Coronavirus infections were reported in a growing number of locations around the world, including in the Philippines, Japan, Europe, South Korea, Iran, Latin America, Sub-Saharan Africa, and the United States.

12. On March 11, 2020, the World Health Organization characterized the Coronavirus (COVID-19) as a pandemic. On March 13, 2020, a national emergency was declared in the United States of America. On March 15, 2020, the United States Centers for Disease Control and

---

[1]  *Cf.*  https://www.who.int/emergencies/diseases/novel-coronavirus-2019/technical-guidance/naming-the-coronavirus-disease-(covid-2019)-and-the-virus-that-causes-it. As used in this Petition, the term "Coronavirus" refers to the virus termed as Coronavirus disease 2019 (COVID-19), including without limitation the severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2), and the term is used broadly, and references the global pandemic associated with the virus first detected in December 2019 in Wuhan, China.

Prevention advised no gatherings of 50 or more people in the United States. The next day, the President advised citizens to avoid groups of more than 10.

13. The Coronavirus has caused tens of thousands of deaths throughout the United States, with the death toll increasing every day, and the numbers of reported cases growing exponentially. The economy has been devastated by business interruptions in Dallas County, the State of Texas, the United States, and worldwide.

14. Coronavirus cases in Texas spiked in March 2020, and a growing number of municipalities issued quarantine directives. The numbers of reported Coronavirus cases have spread throughout Texas Counties, curtailing business, social, and economic activities throughout the State. Correspondingly, the entire nation experienced spikes in infections and deaths, with a growing number of citizens subjected to quarantine orders and business shutdowns.

15. The scientific community recognizes the Coronavirus as a cause of real physical loss and damage.

16. The Coronavirus is physically impacting public and private property, and physical spaces in communities around the world.

17. The global pandemic is exacerbated by the fact that the potentially deadly virus physically infects and stays on the surface of objects or materials for weeks. The duration of the virus' lethal staying power, and the conditions upon which the virus can continue to propagate and infect people, are known facts under continued scrutiny by the scientific community. The virus can physically infect and stay on surfaces for weeks, up to twenty-eight days under some estimates. Moreover, because of the ongoing Coronavirus pandemic, which is raging in Dallas County, a significant component of the public health crisis is the risk of continued contamination of the surface of objects and materials which could propagate infections. Therefore, the Coronavirus has

caused damage, including damage to property, as a result of the staying power of the virus and the communicability of disease from exposure to the surface of objects and materials.

18. For example, China, Italy, France, and Spain have implemented the cleaning and fumigating of public areas prior to allowing them to re-open publicly due to the intrusion of microbials.

19. The physical contamination of surfaces with communicable Coronavirus is a well-recognized cause of physical damage and a reason that civil authorities have issued quarantine orders.

C. **The Civil Authorities Closed Plaintiff's Business, Causing a Cessation of Business Activity.**

20. On March 19, 2020, Texas Governor Greg Abbott issued Executive Order No. GA-08 relating to COVID-19 preparedness and mitigation, which prohibited certain business activities in order to contain the Coronavirus.

21. Also on March 19, 2020, John W. Hellerstedt, M.D., the Commissioner of the Texas Department of State Health Services, in accordance with Section 81.082(d) of the Texas Health and Safety Code, declared a state of public health disaster for the entire State of Texas for the first time since 1901.

22. In March and April 2020, the Dallas County Commissioners Court issued disaster declarations and executive orders, commanding that individuals SHELTER IN PLACE, as a result of the Coronavirus. Dallas County officials first issued a disaster declaration related to the COVID-19 pandemic on March 12, 2020. On March 22, 2020, Dallas County Judge Clay Jenkins issued a "Stay Home Stay Safe" shelter-in-place order that went into effect at 11:59 pm on March 23, 2020.

23. This order closed all dine-in service in Dallas County restaurants and all events were catering services might be used. Specifically, as to restaurants, the order provided:

> Restaurants with or without drive-in or drive-through services and microbreweries, micro-distilleries, or wineries may only provide take out, delivery, or drive-through services as allowed by law.

The March 22, 2020 "Stay Home Stay Safe" order is attached as Exhibit B.

24. Public events where catering services might be used were also prohibited:

> All public or private gatherings of any number of people occurring outside a single household or living unit are prohibited, except as otherwise provided herein.

*Id.*

25. On March 24, 2020, the City of Dallas adopted Dallas County's "Stay Home Stay Safe" order.

26. On April 3, 2020, the County Commissioners issued a renewal of a disaster declaration through May 20, 2020. The most recent shelter-in-place order has been extended through May 15, 2020. It continues the same restrictions on restaurant services.

27. Thus, by executive order of Dallas County, all individuals were ordered to SHELTER IN PLACE at their current place of residence. By executive order of Dallas County, all restaurants in Dallas County, which includes the insured premises, were required to stop all dine-in services and catering services.

28. While the executive order permits take-out and delivery service of food from restaurants, Salum does not have a drive-through and has never had a take-out or delivery service clientele, so that the executive order effectively resulted in a suspension of business at Salum.

29. A cause of civil authorities' closure of businesses, including Plaintiff's, is the contamination of property outside of the insured premises with the Coronavirus.

### D. The Policy Covers Plaintiff's Damage and Losses Sustained and Costs and Expenses Incurred.

30. The damage and loss sustained by Salum as a result of the Coronavirus are covered by the policy (Exhibit A) issued by Defendant to Plaintiff, and no exclusions or defenses alleviate Defendant's obligation to Plaintiff under the policy.

31. Contamination, and potential contamination, of the insured premises by the Coronavirus constitutes a direct physical loss needing remediation to clean the surfaces of, and the surfaces of objects at, the establishment.

32. The policy promises to "pay for direct physical loss of or damage to Covered Property at the premises." Exhibit A, MPT1020205, Page 1 of 39 ¶A.

33. Salum has sustained direct physical loss and/or damage to property arising from and/or related to the Coronavirus, Coronavirus contamination, the threat of Coronavirus contamination, and/or the Civil Authority response related to the Coronavirus.

34. The policy promises to "pay for the actual loss of Business Income . . . sustain[ed] due to the necessary 'suspension' of your 'operations[.]'" Exhibit A, MPT1020205, Page 2 of 39 ¶A(3)(a)(2).

35. The policy promises to pay for additional coverages, including Civil Authority coverage for business income and extra expenses. Exhibit A, MP1020205, Page 15 of 39 ¶A(7)(g).

36. The Policy promises that it provides the "DELUXE PLAN" for businessowners' coverage. Exhibit A, MPT1300205, Page 1 of 1.

37. The Policy promises that changes in form language will benefit the insured. Specifically, Travelers promises that:

> Your new Travelers CGL policy will contain coverage terms and conditions substantially similar to those in your expiring Travelers CGL policy. Also, in order

to make this transition to our new proprietary policy forms as easy as possible for you, we will adjust any claims for CGL coverage under your new policy based upon the terms and conditions of either your expiring policy or your new policy, **whichever are broader**. Likewise, if your expiring policy includes LL coverage and you are renewing that coverage with us, we will adjust any claims for LL coverage under your new policy based upon the terms and conditions of either your expiring policy or your new policy, **whichever are broader**.

Exhibit A, PNU3020419, Page 1 of 2 (emphasis in original).

38. Salum has sustained a suspension of dine-in services as a result of the Coronavirus.

39. Salum has sustained loss of income and incurred expenses as a result of civil authorities prohibiting access to the insured premises.

40. The commercial, business, and property losses and damages, business interruption, income losses sustained, and costs and expenses incurred, as a result of the Coronavirus and the civil authority response to the Coronavirus, are covered by the policy. Defendants owe Plaintiff compensation for Salum's damages, losses, costs, and expenses arising from and related to the Coronavirus, Coronavirus contamination, the threat of Coronavirus contamination, and/or the Civil Authority response related to the Coronavirus.

### E. Defendants Denied Plaintiff's Claim.

41. In compliance with the prerequisites for coverage, including the notice prerequisites, Salum submitted a claim for coverage for the damage and losses sustained and costs and expenses incurred as a result of the Coronavirus, as more fully discussed herein, fulfilling all notice provisions in the policy.

42. The claim Plaintiff submitted to Defendant under the policy was summarily denied without any meaningful investigation.

43. The letter from Defendant, dated March 30, 2020, offered the following reasons for denying the claim:

   a. Plaintiff had not suffered a cessation of business because, although all dine-in service was ordered suspended, it was still legally permissible for customers to approach the premises to pick up take-out orders;

   b. Plaintiff had reported no physical damage to the insured premises;

   c. A civil authority had not prohibited access to the premises due to loss or damage to property other than the insured premises;

   d. The policy does not cover loss or damages caused by "delay, loss of use, or loss of market" or "contamination by other than 'pollutants'";

   e. The policy does not cover loss or damages caused by "acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body"; and

   f. The policy does not cover loss or damages caused by "any virus, bacterium or other microorganism."

*See* Letter from Travelers, dated March 30, 2020, attached as Exhibit C. Travelers summarized the reasons for the denial this way:

> To the extent that you seek coverage for Business Income losses that are caused by or resulting from "loss of use or loss of market", "contamination by other 'pollutants'", and/or "[a]cts or decisions, including the failure to act or decide, of any person, group, organization or governmental body", there is no coverage for

> your loss. Additionally, because the policy excludes loss or damage caused by or resulting from any virus, which includes the COVID-19 virus, your business income loss is not covered.

*Id.*

44. Each and every reason Travelers' letter proffers for denying coverage is inaccurate, and each basis is denied by Plaintiff.

45. One reason why Travelers' denial letter is inaccurate is because, *inter alia*, the letter quotes language not in the policy.

46. Page three quotes language allegedly appearing in an endorsement titled "exclusion of loss due to virus or bacteria." *See* Exhibit C, p. 3. Even were this language in the Policy, it would not foreclose coverage because *inter alia* the loss is caused by Civil Authority closure. Independently, the language quoted in Travelers' denial letter does not apply because it is not in the Policy. *Contrast* Exhibit C, p. 3 *with* Exhibit A (quoted language beginning with "A. the exclusion . . . or disease" is not there). There is a reference to IL T3 82 05 13, but the form and the language quoted in Travelers' denial letter is not in the Policy.[2]

### V.   CAUSES OF ACTION

### COUNT ONE

### Breach of Contract

47. Plaintiff restates and incorporates all the paragraphs above into this claim for relief as if fully set forth herein.

---

[2] The Policy skips from PR T4 97 03 15 to PN T0 22 12 15. *See* Exhibit A.

48. Plaintiff entered into a contract with Travelers for insurance coverage, including coverage for Business Income, Extra Expense and Civil Authority.

49. Plaintiff suffered property damage and loss of business income and extra expenses covered by the Policy.

50. Travelers breached its contract with Plaintiff by denying coverage and denying Plaintiff's claim.

51. Plaintiff has been damaged by the breach, at a minimum, in the amount of the unpaid insurance proceeds.

52. All conditions precedents that are material to coverage for Plaintiff's claim have been performed.

## COUNT TWO

### Violation of the Texas Insurance Code §541.060

53. Plaintiff restates and incorporates all the paragraphs above into this claim for relief as if fully set forth herein.

54. Travelers misrepresented a material fact and policy provision relating to the coverage at issue in violation of Tex. Ins. Code §541.060(a)(1). Namely, despite its knowledge that the Salum's property was contaminated by the virus and Salum sustained business income loss as a result, Travelers stated that there was no covered loss to the Insured Premises.

55. Travelers failed at all material times to effectuate a prompt, fair and equitable settlement of Plaintiff's claim, after its lability had become reasonably clear, in violation of Tex. Ins. Code § 541.060(a)(2)(4). Travelers' liability became reasonably clear when it had notice of the widespread contamination of property by the coronavirus and issuance of executive orders

prohibiting certain business activities. Instead of promptly investigating and paying Salum's claim, Travelers summarily denied the claim.

56. Travelers violated Tex. Ins. Code §541.060(a)(7) by refusing to pay Salum's claim without conducting a reasonable investigation or any analysis with respect to the claim. Travelers has conducted no investigation as to Salum's business income loss before it denied the claim.

57. Travelers' violations were done knowingly.

58. Plaintiff is entitled to actual damages as well as any and all consequential damages, statutory penalties, and punitive damages as provided by law.

## COUNT THREE

### Breach of the Duty of Good Faith and Fair Dealing

59. Plaintiff restates and incorporates all the paragraphs above into this claim for relief as if fully set forth herein.

60. Travelers owes Plaintiff a duty of good faith and fair dealing in connection with the investigation and resolution of claims under the Policy.

61. Such duty obligated Travelers to not deny liability to Plaintiff when its liability under the policy was reasonably clear.

62. Travelers' liability was reasonably clear when it had notice of the widespread contamination of property by the coronavirus and issuance of executive orders prohibiting certain business activities.

63. Travelers violated and continues to violate its duty of good faith and fair dealing by denying liability to Plaintiff under the Policy and continuing to refuse to pay Plaintiff the sums due and owing to Plaintiff under the policy.

64. Travelers' acts and omissions constituting a breach of the duty of good faith and fair dealing were and continue to be committed with actual awareness that they are wrongful and that they are inflicting harm on Plaintiff. Travelers' violation of the duty of good faith and fair dealing is grossly negligent, malicious, and/or fraudulent. Travelers' violation of the duty of good faith and fair dealing, therefore, warrants and authorizes the imposition of punitive or exemplary damages.

65. Plaintiff has suffered and will continue to suffer actual damages as a result of Travelers' breach of the duty of good faith and fair dealing.

## COUNT FOUR

### Declaratory Judgment Action

66. Plaintiff restates and incorporates all the paragraphs above into this claim for relief as if fully set forth herein.

67. Pursuant to Texas Civil Practice and Remedies Code Sections 37.001, *et seq.*, the Court may declare rights, status, and legal relations whether or not further relief is or could be claimed, and before or after breach of contract.

68. Plaintiff Salum seeks a judgment declaring that the Policy provides coverage to Salum for: (1) the damage to the Insured Premises by the Coronavirus; (2) business income loss and extra expenses resulting from the interruption of Salum's operation due to the damage to the Insured Premises by the Coronavirus; and (3) the business income loss and extra expenses Salum sustained as result of Salum's inability to access and use the Insured Premises due to executive orders and other actions taken by civil authorities.

69. Plaintiff also seeks a declaratory judgment that it has fulfilled any and all preconditions, notices, and duties owed to Defendant under the Policy.

## COUNT FIVE

### Costs Under Civil Practice and Remedies Code Section Chapters 37 and 38

70. Plaintiff restates and incorporates all the paragraphs above into this claim for relief as if fully set forth herein.

71. Plaintiff is entitled to recover costs and reasonable and necessary attorney fees that are equitable and just under Texas Civil Practice and Remedies Code Section 37.009, because this is a suit for declaratory relief. Plaintiff is also entitled to recover its costs and reasonable attorney's fees under Texas Civil Practice and Remedies Code Section 38.001 and all applicable provisions of the Texas Insurance Code.

## VI.   CONDITIONS PRECEDENT

72. All conditions precedent to Plaintiff's claim for relief have been performed or have occurred.

## VII.   REQUESTED RELIEF

73. For these reasons Plaintiff Salum Restaurant Ltd., asks that the Court render judgment: (1) declaring that the policy issued by Defendant provides coverage for Plaintiff's property loss as a result of coronavirus pandemic, and the business income loss and extra expenses Plaintiff sustained due to the property loss and the actions taken by civil authorities as requested herein, and (2) awarding Plaintiff the following damages:

   a. Actual damages for the full amount of property loss, business income loss and extra expenses sustained by Salum as a result of the Coronavirus and actions taken by civil authorities;

   b. Actual damages of all amounts owed under the contract;

   c. Treble damages under Texas law;

    d. Attorneys' fees and costs pursuant to Texas Civil Practice and Remedies Code Sections 37.009 and 38.001, Texas Insurance Code Section 542.60, and Texas Insurance Code Chapter 542A;

    e. Penalties as provided by Sections 542.058(a) and 542.060(a) of the Texas Insurance Code;

    f. Actual damages caused by the Defendants wrongful conducts, including but not limited to the benefits wrongfully withheld and attorneys' fees and court costs.

    g. Exemplary damages; and

    h. Pre- and post-judgment interest to the extent permitted by law.

April 24, 2020

**JURY TRIAL DEMANDED**

Respectfully submitted,

/s/ Matthew McCarley
**MATTHEW MCCARLEY**
Texas State Bar No. 24041426
mmccarley@fnlawfirm.com
**N. MAJED NACHAWATI**
Texas State Bar No. 24038319
mn@fnlawfirm.com
**S. ANN SAUCER**
Texas State Bar No. 00797885
asaucer@fnlawfirm.com
**MISTY A. FARRIS**
Texas State Bar No. 00796532
mfarris@fnlawfirm.com
**FEARS NACHAWATI, PLLC**
5473 Blair Rd.
Dallas, Texas 75231
Telephone: (214) 890-0711
Facsimile: (214) 890-0712

**NEJAT AHMED**
Texas State Bar No. 24034304
nejat@lalawtx.com

**JENNIFER B. LeMASTER**
State Bar No. 24041063
jennifer@lalawtx.com
**LEMASTER & AHMED PLLC**
555 Republic Drive, Suite 200
Plano, Texas 75074
Telephone:     972.484.0410
Facsimile:      972.484.0413


ATTORNEYS FOR SALUM RESTAURANT LTD.